UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GORDON T. WALLER, an individual,

    Plaintiff,

v.

CASE NO. 05-70613
HON. LAWRENCE P. ZATKOFF

DAIMLER CHRYSLER CORPORATION,
a foreign corporation,

    Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the Theodore Levin United States Courthouse,
in the City of Detroit, State of Michigan, on September 19, 2005

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendant's Motion to Dismiss and/or for Summary Judgment filed on March 16, 2005. The motion has been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decisional process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendant's Motion to Dismiss and/or for Summary Judgment is GRANTED.

## II. BACKGROUND

This is a federal employment discrimination case brought by the Plaintiff, Gordon Waller, against his current employer, Daimler Chrysler Corporation. Plaintiff alleges disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq* ("ADA"). Plaintiff claims that Defendant has denied his requests to be transferred to another production facility that might better accommodate his disabilities, which allegedly include high blood pressure, hypertension, diabetes, and anxiety.

**A.   Facts**

Plaintiff is currently employed at Defendant Chrysler's Warren Truck Assembly Plant, ("Plant"). Plaintiff first applied for a position with the Plant on November 25, 1996. Paragraph 5 of his application, which he signed, provides as follows:

> In the event that I am employed by Chrysler Corporation or any of its subsidiaries, I agree to comply with and be governed by all its policies and procedures in effect at a given time, and I acknowledge that none of its policies and procedures constitute terms of employment contrary to paragraph 6 below. I agree that I will be governed by and must comply with Chrysler's Employee Dispute Resolution Process, which requires many employment-related claims to be resolved exclusively through arbitration.

Defendant's Ex. C. The Employee Dispute Resolution Process ("EDRP") requires claims involving "handicap discrimination" to be submitted to binding arbitration before the American Arbitration Association. Defendant's Ex. D. Defendant accepted Plaintiff's application, and Plaintiff alleges that he began his employment with Defendant in January, 1997, as a facility engineer.

Plaintiff alleges that he received a promotion in 1999 to the position of maintenance area manager. He also alleges that he was promoted to the position of "facilities engineering manager" in April, 2000. He claims, however, that his employment situation changed drastically after an

individual named Robert Bowers became Plant manager on March 31, 2003.

According to Plaintiff, Bowers chastised him repeatedly. For instance, on April 14, 2003, Bowers allegedly upbraided Plaintiff for not improving the landscaping at the front of the Plant. In late April, 2003, Bowers allegedly made Plaintiff take a vacation day for the birth of his granddaughter. Furthermore, in May, 2003, Bowers allegedly transferred Plaintiff to the second shift against his wishes and denied Plaintiff's request to transfer to the Detroit Axle Plant. In August, 2003, Plaintiff alleges that Bowers berated him in public on four different occasions when mechanical problems with the assembly line caused the loss of production units. Plaintiff also alleges that Bowers would regularly curse at him and hold him responsible for line problems that were not his fault. Plaintiff claims that as a result of Bowers's actions, he began suffering from "high blood pressure, diabetes, extreme stress and anxiety attacks . . . ." Compl. at ¶ 31.

On October 16, 2003, Plaintiff filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant. Plaintiff's charge alleged the following:

> I began employment with the above named employer in January, 1997. I am currently employed as a Maintenance Area Manager.
>
> Since April 9, 2003, I have been subjected to different terms and conditions of employment by the Center Manager, including but not limited to; criticizing me and my work in order to demoralize me, threatening me with termination stating that he will 'get rid of me.' I am constantly accused of not performing my job. On April 15, 2003, I was informed that I was being replaced because I had not been doing my job. On April 24, 2003, I was informed that I had to use vacation time for missing one day of work. On May 1, 2003, I was replaced by a younger male. On September 3, 2003, I was denied transfer to another facility. In August 23, 2003, I was called into my supervisor's office and again informed that I was not doing my job, I would be held responsible for the failure of a piece of equipment, and threatened with discharge. On September 8, 2003, I

>received a disciplinary warning.
>
>I believe that I am being subjected to different terms and conditions of employment, receiving a disciplinary warning because of my age, 56, in violation of The Age Discrimination in Employment Act of 1967, as amended.

Defendant's Ex. B. Plaintiff checked the box for discrimination based on "Age." He also indicated that the "Earliest" date of discrimination was April 9, 2003, and the "Latest" date of discrimination was September 8, 2003. The "Continuing Action" box was not checked. On January 13, 2004, Plaintiff obtained a right-to-sue letter, but he did not commence suit within the 90 day time limit as required by Title VII.

On or about April 8, 2004, Bowers gave Plaintiff a performance evaluation of "inconsistent." Plaintiff alleges that under the previous plant manager he had been rated as either "fully effective" or a "significant contributor." Compl. at ¶ 32. Plaintiff alleges that the rating of "inconsistent" should have triggered a "30-60-90 day review program" to begin in July, 2004. He claims, however, that no such review program was ever implemented. Plaintiff seems to allege that without completing the review program, Plaintiff's rating of "inconsistent" could not be removed, thereby giving Defendant a pretext for refusing to transfer him to a different facility that might accommodate his alleged disabilities. Compl. at ¶ 33. Plaintiff alleges that the low rating and Bowers's bad behavior caused him to take time away from work in May, 2004, in order to be counseled by a psychiatrist. Plaintiff returned to work on or about June 1, 2004.

On October 4, 2004, Plaintiff filed another charge of discrimination with the EEOC. This charge is identical to the October 16, 2003 charge, except that Plaintiff checked the box marked "Disability" instead of "Age." Defendant's Ex. A. The narrative is the same, alleging that Plaintiff "was replaced by a younger male," and that he received a disciplinary warning because of his age

"in violation of The Age Discrimination in Employment Act of 1967, as amended." *Id.* Plaintiff also indicated that the earliest and latest dates of discrimination were the same, April 9, 2003, and September 8, 2003, respectively. The "Continuing Action" box was again not checked. Plaintiff allegedly received a right-to-sue letter on November 18, 2004. On February 16, 2005, Plaintiff filed the present action alleging one count of disability discrimination. Presently before the Court is Defendant's Motion to Dismiss and/or for Summary Judgment, in which Defendant argues that (1) Plaintiff failed to exhaust his administrative remedies, and (2) Plaintiff's disability claim is subject to a binding agreement to arbitrate.

### III. LEGAL STANDARD

While fulfilling the administrative exhaustion requirements of the ADA is not a jurisdictional requirement, it is a condition precedent to filing suit. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). Thus, Defendant's motion to dismiss for lack of exhaustion is "properly considered a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted . . . ." *Varga v. Rumsfeld*, 172 F. Supp. 2d 1323, 1324 (D. Colo. 2001); *see also Hoover v. Timken Co.*, No. 01-3905, 30 Fed. Appx. 511 (6th Cir. 2002). A motion brought pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of Plaintiff's claims.

The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in Plaintiff's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577-78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). Furthermore, the Court need not accept as true legal conclusions or

5

unwarranted factual inferences. The Court may properly grant a motion to dismiss when no set of facts exists that would allow Plaintiff to recover. *See Carter by Carter v. Cornwall*, 983 F.2d 52, 54 (6th Cir. 1993).

In deciding a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.34[2]. If, in deciding the motion, the Court considers matters outside the pleadings, the motion will be treated as one for summary judgment pursuant to FED. R. CIV. P. 56. *See* FED. R. CIV. P. 12(b).

If the Court decides to treat the motion as one for summary judgment, summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may not be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of

6

material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial.  *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324.  The non-moving party must do more than show that there is some metaphysical doubt as to the material facts.  It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment.  *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV.  ANALYSIS

Defendant argues that Plaintiff's ADA claim should be dismissed because although Plaintiff checked the box for disability discrimination in his October 4, 2004 EEOC complaint, the EEOC complaint fails to describe any disability-based discrimination.  Furthermore, Defendant argues, even if checking the box for disability discrimination is sufficient, Plaintiff indicated that the "Latest" date of discrimination was September 8, 2003, which is well beyond the 300 day time period for filing an administrative complaint in a deferral state such as Michigan.  *See* 42 U.S.C. § 2000e-5(e); *Campau v. Orchard Hills Psychiatric Ctr.*, 946 F. Supp. 507, 510 (E.D. Mich. 1996).

Defendant also argues that Plaintiff's ADA claim should be dismissed because it is subject to binding arbitration.  Defendant argues that Plaintiff's signed employment application unambiguously states that his employment will be governed by the EDRP, which in turn requires that all discrimination actions and actions based on "handicap accommodation" be submitted to binding arbitration.

With respect to Defendant's argument that Plaintiff failed to exhaust his administrative

7

remedies, Plaintiff responds by arguing that his disability discrimination allegations "were continuing in nature." Plaintiff's Response Brief, at 2. Specifically, he claims that the narrative in the October 4, 2004 EEOC complaint describes in the present tense unwarranted criticism and threats of termination "since April 9, 2003 . . . ." Defendant's Ex. A. Plaintiff argues that the use of the present tense is sufficient to denote continuing violations. As for Defendant's argument that Plaintiff's disability claim is subject to binding arbitration, Plaintiff argues that the application only states that the EDRP requires "many" employment-related claims to be resolved exclusively through arbitration. Plaintiff argues that because the application did not specify which claims are subject to binding arbitration under the EDRP, he cannot be forced to submit his disability claim to arbitration.

Finally, Plaintiff also argues that Paragraph 6 of the application, which states that any employment would be for an "indefinite duration, terminable at will and for any reason . . ," renders the arbitration provision in the application unenforceable because it demonstrates that "none of the policies and procedures set forth by the Defendant constitutes terms of employment." Plaintiff's Response Brief, at 3.

**A.      Administrative Exhaustion**

In *Sherman v. Optical Imaging Systems, Inc.*, 843 F. Supp 1168 (E.D. Mich. 1994), the court described the procedural requirements for filing an ADA claim:

> ADA § 107, 42 U.S.C. § 12117(a), specifically incorporates by reference the enforcement mechanisms set out in Title VII of the Civil Rights Act of 1964. That act requires a claimant who wishes to bring a court suit, inter alia, to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discrimination. 42 U.S.C. § 2000(e)-5(e) (filing period for claimants in states, like Michigan, which have their own fair employment laws).

*Id.* at 1179. In the current case, Plaintiff filed his charge with the EEOC on October 4, 2004, more than 300 days after the last alleged incident of discrimination, on September 8, 2003. Plaintiff

8

claims that his charge referred to continuing violations by use of the present tense, e.g. "I am constantly accused of not performing my job." Plaintiff's Response Brief at 2.

The Court finds this argument unpersuasive. In his EEOC complaint, Plaintiff indicated that the latest incident of discrimination was September 8, 2003, and did not check the "Continuing Action" box. It is true that "[m]arking 'continuing action' is not required to establish a claim of continuing violation so long as 'allegations or predicate facts [are] sufficient in the EEO[C] complaint' to establish that a continuing violation theory is being alleged." *Strouss v. Mich. Dep't of Corr.*, 75 F. Supp. 2d 711, 723 (E.D. Mich. 1999) (quoting *Haithcock v. Frank*, 958 F.2d 671, 676 (6th Cir. 1992)). However, in *Haithcock*, where the Sixth Circuit found the allegations in the complaint were sufficient to establish a continuing violations theory, it noted that the claimant must allege "a specific discriminatory act within the limitations period." *Haithcock*, 958 F.2d at 678.

In the current case, the Court agrees that the acts described in the EEOC complaint are sufficiently related such that if the last one fell within 300 days, the earlier ones could be considered under a continuing violations theory. However, Plaintiff's EEOC complaint does not allege a discriminatory act within 300 days, and it specifically states that the last discriminatory act occurred on September 8, 2003.

Furthermore, the EEOC complaint cannot be construed to allude to events that happened within the 300 day period. The Court notes that the complaint filed on October 4, 2004 is *identical* to the complaint filed on October 16, 2003, with the exception that the disability box is checked instead of the age box. Thus, the October 4, 2004 complaint cannot be reasonably interpreted to refer to events that occurred after October 16, 2003. This conclusion is bolstered by comparing the substance of the EEOC complaint with the allegations in the federal complaint. The crux of

9

Plaintiff's federal claim is that Defendant used an "inconsistent" rating in April, 2004 as a pretext to avoid accommodating his disability by transferring him to another facility. Plaintiff's Compl. at ¶¶ 40-45. However, the EEOC complaint alleges nothing about Defendant's failure to accommodate Plaintiff's disability. Indeed, apart from the checking of the disability box, there is nothing in the EEOC complaint about Plaintiff's disability at all. The complaint specifically states that Plaintiff is "being subjected to different terms and conditions of employment . . . because of my age." Defendant's Ex. B.

While the pleading standards governing administrative complaints are not stringent, "all claimants, including pro se claimants, have a responsibility to meet the requirements of the law, which include setting out the specific nature of each of their claims and the specific facts supporting each claim." *Lomax v. Sears, Roebuck & Co.*, No. 99-6589, 2000 U.S. App. LEXIS 33884, *16 (6th Cir. 2000). Thus, "the complaint that is filed in district court is limited 'to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination.'" *Id.* (quoting *EEOC v. Bailey Co., Inc.*, 563 F.2d 439, 446 (6th Cir. 1978)).

In the current case, Plaintiff's claim of pretext for disability discrimination in 2004 is not reasonably related to claims of age discrimination in 2003. Plaintiff neither set out the specific nature of his disability claim in his EEOC complaint, nor the specific facts supporting that claim. Thus, the EEOC could not be reasonably expected to investigate a pretext for disability discrimination in 2004 based on claims of age discrimination in 2003. *See Smith v. Leis*, No. 97-3373, 1998 U.S. App. LEXIS 26034 (6th Cir. 1998) (affirming summary judgment on the basis that the plaintiff's failure to promote claim lacked a sufficient factual basis in his administrative complaint alleging race and disability discrimination). Since the acts alleged in Plaintiff's EEOC

complaint were outside the 300 day period, and the later acts alleged in the federal complaint do not reasonably relate to the EEOC complaint, the Court finds that Plaintiff has failed to exhaust his administrative remedies.

The Court notes that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. TWA*, 455 U.S. 385, 393 (1982). However, there are no waiver or estoppel circumstances here, and the Sixth Circuit has held that "[e]quitable tolling is only available in compelling cases." *Boyd v. Tennessee Dep't of Educ.*, No. 99-5297, 2000 U.S. App. LEXIS 5840, *4 (6th Cir. 2000). In *Boyd*, the Sixth Circuit upheld the district court's dismissal of the plaintiff's Title VII claim because the plaintiff had not timely exhausted her administrative remedies, and had "not made any attempt to show that she was unaware of the filing deadline, that her delay in filing was caused by the defendant, or that the defendant was not prejudiced by the delay." *Id.* Likewise, in the current case Plaintiff has produced no evidence showing that he should be excused for failing to exhaust his administrative remedies. Thus, the Court finds that Plaintiff's ADA claim fails as a matter of law.

**B.     Arbitration**

Even if Plaintiff had a viable ADA claim, he would be required to arbitrate his claims under the terms of his employment application. It is well-settled that statutory rights may properly be the subject of a binding agreement to arbitrate. *See Gilmer v. Interstate/ Johnson Lane Corp.*, 500 U.S. 20 (1991). The ADA itself explicitly recognizes the benefits of alternative dispute resolution. *See* 42 U.S.C. § 12212 ("Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation,

11

factfinding, minitrials, and arbitration, is encouraged to resolve disputes arising under this chapter."). In addition, federal courts have recognized that an employee may prospectively waive the right to a judicial determination of future ADA claims. *See Miller v. Public Storage Management, Inc.*, 121 F.3d 215, 218 (5th Cir. 1997); *Bercovitch v. Baldwin School, Inc.*, 131 F.3d 141, 151 (1st Cir. 1998).

Plaintiff offers two arguments in an effort to show that his claim is not subject to binding arbitration. First, Plaintiff argues that the employment application did not specify which employment-related claims would be resolved exclusively through arbitration. He also claims that Defendant has not offered evidence showing that he reviewed the EDRP or that he had knowledge of which claims were subject to arbitration. Second, he claims that under *Stewart v. Fairlane Mental Health Ctr.*, 571 N.W.2d 542 (Mich. Ct. App. 1997), the agreement to arbitrate is unenforceable because paragraph 6 of the application provides that any employment would be for an "indefinite duration, terminable at will and for any reason . . . ." Thus, Plaintiff argues that paragraph 6 of the application demonstrates that "none of the policies and procedures set forth by the Defendant constitutes terms of employment." [1] Plaintiff's Response Brief, at 3. The Court finds neither of Plaintiff's arguments persuasive.

First, by signing the employment application, Plaintiff unambiguously agreed to be bound by the EDRP. Plaintiff's ignorance of the specific claims subject to arbitration under the EDRP does not render the agreement to arbitrate unenforceable. *See Haskins v. Prudential Ins. Co. of Am.*, 230 F.3d 231, 241 (6th Cir. 2000) (holding that an employer's arbitration provision requiring securities

---

[1] Plaintiff does not claim that the EDRP unfairly limits his ability to effectively vindicate his statutory rights.

dealer employees to arbitrate "any dispute, claim or controversy . . . that is required to be arbitrated under the rules . . . of the organizations with which I register" was enforceable despite the failure of the employer to provide the employee with the securities organization rules setting forth which claims would be subject to arbitration).

Second, Plaintiff's reliance on *Stewart* is misplaced. In *Stewart*, the Michigan Court of Appeals held that an arbitration provision included in an employee policy manual was not enforceable because the policy manual stated that the manual was "neither an 'employment agreement' nor a 'contract of employment.'" *Stewart*, 571 N.W.2d at 543. The court held that this language, in addition to language indicating that the manual could be amended from time to time, demonstrated that the employer did not intend to be bound by any of the terms of the policy manual, including the arbitration provision.[2] *Id.* at 546. Thus, no contract to arbitrate ever existed. *Id.* (citing *Heurtebise v. Reliable Business Computers, Inc.*, 550 N.W.2d 243, 247 (Mich. 1996)).

Unlike the policy manual in *Stewart*, nowhere in the application for employment or the EDRP does Defendant express a desire not to be bound by their terms. Paragraph 5 of the employment application states that "none of [Defendant's] policies and procedures constitute terms of employment contrary to paragraph 6 below." Defendant's Ex. C. Paragraph 6 provides that the employment will be "at will." *Id.* Thus, paragraph 5 only indicates that none of the policies and procedures affect the "at will" status of the employee. Therefore, Defendant did not explicitly or

---

[2] Plaintiff does not argue that Defendant's ability to unilaterally modify or terminate the EDRP renders it unenforceable. *See Stewart*, 571 N.W.2d at 546. Even if Plaintiff made such an argument, however, the Michigan Court of Appeals has on two separate occasions found that an employer's reservation of the right to modify an employee manual did not render the arbitration provision unenforceable where, as here, there was no evidence that the employer ever exercised that right. *See Rushton v. Meijer, Inc. (on remand)*, 570 N.W.2d 271 (Mich. Ct. App. 1997), *overruled on other grounds, Rembert v. Ryan's Family Steakhouse, Inc.* 596 N.W.2d 208 (1999); *Hicks v. EPI Printers, Inc.*, ___ N.W.2d ____, 2005 WL 839502 (Mich. Ct. App. April 12, 2005).

implicitly express a desire not to be bound by the terms of the EDRP. Accordingly, because Plaintiff unambiguously agreed to be bound by the EDRP by signing the employment application, the Court finds the arbitration provision enforceable. *See Hicks v. EPI Printers, Inc.*, ___ N.W.2d ____, 2005 WL 839502 (Mich. Ct. App. April 12, 2005) (finding agreement to arbitrate in accordance with the terms of an employee manual enforceable despite "at will" employment references in the manual and language indicating that the employer could modify the employee manual at any time).

## V.  CONCLUSION

Accordingly, for the reasons set forth above, Defendant's Motion to Dismiss and/or for Summary Judgment is hereby GRANTED.

IT IS SO ORDERED.

                                            s/Lawrence P. Zatkoff
                                            LAWRENCE P. ZATKOFF
                                            UNITED STATES DISTRICT JUDGE

Dated:  September 19, 2005

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 19, 2005.

                                            s/Marie E. Verlinde
                                            Case Manager
                                            (810) 984-3290